IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DORIEN GREYSON ROSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19-CV-620 |
| | ) | |
| BAPTIST CHILDREN'S HOMES OF NORTH CAROLINA, JOHN ADAMICK, REGINA KEENER, RUSTY BUNKER, AMANDA PARTON, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

In August 2018, the Baptist Children's Homes of North Carolina was looking for a married couple to provide live-in child care at the residential facility it operates in Thomasville, North Carolina. Plaintiff Dorien Rose and his wife Lorelei Rose applied. The positions came together: either both spouses would be hired, or neither would be. After a multi-stage interview process that included several inquiries about Mrs. Rose's hearing loss, neither was hired.

After receiving a right-to-sue letter, Mr. Rose filed suit, alleging BCH and several individual BCH employees discriminated against him based on Mrs. Rose's disability, in violation of the Americans with Disabilities Act. The individual defendants move to dismiss; BCH moves to dismiss or, in the alternative, for judgment on the pleadings; and Mr. Rose moves to amend his complaint.

Because the ADA does not permit individual liability, the claims against the individual defendants will be dismissed.  As to BCH, Mr. Rose has alleged facts sufficient to state a claim in the proposed amended complaint, and it would not be futile for him to amend his complaint as proposed.  Accordingly, the Court grants Mr. Rose's motion to amend his complaint and denies BCH's motion to dismiss as moot.

**FACTS ASSERTED IN THE COMPLAINT
AND PROPOSED AMENDED COMPLAINT**

In August 2018, Mr. and Mrs. Rose applied for a position with BCH in response to BCH's job posting for "a Christian, married couple to serve as residential houseparents."  Doc. 21-3 at 2;[1] Doc. 2 at 8; Doc. 25 at p. 5 ¶ 1.  Either both spouses would be hired, or neither.  Doc. 2 at 8, 9; Doc. 25 at p. 5 ¶ 1, p. 7 ¶ 8.  Daily responsibilities included "[p]rovid[ing] Christian Role Model and spiritual guidance and a Christian environment to include Daily Devotions and regular church attendance," as well as nearly three dozen other tasks which do not appear religious in nature.  Doc. 21-3 at 2–3.  The listed qualifications do not include any religious training or experience.  Doc. 21-3 at 3.

After Mr. and Mrs. Rose applied and had two interviews online, they came for an in-person interview.  Doc. 25 at pp. 5–7 ¶¶ 3–8; Doc. 2 at 8–9.  Mrs. Rose twice had to

---

[1] BCH provided the job description, Doc. 21-3, as an attachment to its Answer.  Mr. Rose refers to the job description in his proposed amended complaint, Doc. 25 at p. 5 ¶ 1, and in his reply to the motion to amend, Doc. 29 at 8–10, 14–15, and he does not appear to contest the authenticity of the document as provided by BCH.  It is thus appropriate to consider in connection with the pending motions.  *See, e.g., Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006) (court may consider document attached to the 12(b)(6) motion to dismiss under consideration if it was "clearly integral to, and was relied upon in," the complaint, and the plaintiff "does not dispute its authenticity"); *Baehr v. Creig Northrop Team, P.C.*, No. WDQ–13–0933, 2014 WL 3725906, at *1 n.3 (D. Md. July 24, 2014) (evaluating futility of a motion to amend complaint with documents that may be considered on a motion to dismiss).

ask BCH interviewers to speak up, and one BCH representative, Rusty Bunker, asked questions about her hearing loss. Doc. 2 at 9; Doc. 25 at pp. 6–7 ¶ 8.

In a follow-up conversation, Mr. Bunker told Mrs. Rose that BCH was "very, very interested" in the couple and had questions about Mrs. Rose's hearing loss and any needed accommodations. Doc. 2 at 10; Doc. 25 at pp. 9–11 ¶ 12. According to Mr. Rose's first complaint, Mrs. Rose "informed them that we had service dogs, but could tell that [there] would be an issue with them." Doc. 2 at 10. According to the proposed amended complaint, Mrs. Rose told Mr. Bunker that the dogs are "hearing dogs for when someone is at the door or events take place outside that she cannot hear," and they are "mostly used when she is by herself." Doc. 25 at p. 9 ¶ 12. Mrs. Rose told Mr. Bunker she was trying to get hearing aids; while visiting BCH, her hearing was a bit worse than usual due to congestion; and she was speaking with Mr. Bunker by phone "without any hearing accommodation." Doc. 25 at pp. 9–10 ¶ 12. In addition, she told him "she is usually okay if the person she is talking to is looking at her;" that "she usually only has a problem with someone knocking at the door;" and that the BCH home's doorbells "should be fine for her hearing." Doc. 25 at p. 10 ¶ 12. After Mr. Bunker inquired further about Mrs. Rose's service dogs, she told him that "if anything, they would be restricted to her room" and "that they are ADA dogs." Doc. 25 at p. 10 ¶ 12.

After the phone call, the Roses asked Mrs. Rose's mother if she could care for the dogs if they were hired. Doc. 25 at p. 11 ¶ 12. Later that same day, Mrs. Rose informed Mr. Bunker that "the dogs were no longer an issue," Doc. 2 at 10; Doc. 25 at p. 11 ¶ 12, and "[n]o accommodations will be needed." Doc. 25 at p. 11 ¶ 12.

Mr. Bunker and BCH's director of Human Resources, John Adamcik, called back the next day to discuss the dogs further. They focused on Mrs. Rose's ability to care for the children and on accommodations. Doc. 2 at 10; Doc. 25 at pp. 12–13 ¶ 13. Mrs. Rose repeated that she would not need accommodations and explained she had not taken the dogs with her when she was a house parent at the Arkansas Sheriff's Youth Ranch. Doc. 25 at pp. 12–13 ¶ 13. Mrs. Rose told Mr. Bunker and Mr. Adamcik that "she has functioned her entire life without having hearing aids," though she required accommodations in college to hear certain professors. *Id.* at p. 13 ¶ 13.

Two weeks later, the director of BCH's Thomasville house, Regina Keener, called to say they had "decided to go in a different direction." *Id.* at p. 14 ¶ 15; *see also* Doc. 2 at 11. She asked the Roses "to consider allowing them to call" if BCH has another opening. Doc. 25 at p. 14 ¶ 15; *see also* Doc. 2 at 11.

Mr. Rose filed a charge with the Equal Employment Opportunity Commission and later received his right-to-sue notice. Doc. 25 at pp. 14–15 ¶¶ 17, 19; *see also* Doc. 2 at 12–16 (Charge of Discrimination filed against BCH by Mr. Rose, and Dismissal and Notice of Rights from EEOC). Mr. Rose then timely filed this case.

According to the proposed amended complaint, two months after this lawsuit was originally filed, Mrs. Rose—who also filed a charge with the EEOC and then a federal case[2]—received her complete EEOC file. Doc. 25 at p. 15 ¶ 18. In the file was an email by Ms. Keener dated November 13, 2018, apparently written after Mr. Bunker's

---

[2] *Lorelei Joliet Rose v. Baptist Children's Homes of North Carolina et al.*, No. 1:19-cv-621-CCE-JLW. The parties in that case have filed similar motions.

conversation with Mrs. Rose about the service dogs and before Mrs. Rose rescinded her accommodation request related to the dogs. *Id.* at 21. Ms. Keener wrote that while the Roses "were our next choice to consider for employment," her hearing loss and need for accommodations were a surprise and that "I will need time to think about who we choose next." *Id.*

## DISCUSSION

### I.  Motion to Dismiss by Individual Defendants

The BCH employees named as individual defendants in Mr. Rose's original complaint move to dismiss Mr. Rose's claims against them. There is no liability for individuals under the ADA, whether in their personal or official capacities. *Swaim v. Westchester Acad., Inc.*, 170 F. Supp. 2d 580, 583 (M.D.N.C. 2001); *see also Woodbury v. Victory Van Lines*, 286 F. Supp. 3d 685, 693–94 (D. Md. 2017) (citing cases that interpret Title VII and ADA coextensively as to the definition of an "employer" that bears liability, which excludes individual supervisors). In Mr. Rose's proposed amended complaint, Doc. 25, he names only BCH as a defendant. The Court will grant the individual defendants' motion to dismiss the ADA claim with prejudice. Doc. 17.

### II.  Motion to Amend Complaint by Mr. Rose

Under Fed. R. Civ. P. 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave," which the court "should freely give . . . when justice so requires." "The Fourth Circuit has stated that leave to amend under Rule 15(a) should be denied only in three situations: when the opposing party would be prejudiced, when the amendment is sought in bad faith, or when the proposed

amendment would be futile." *Logue v. Patient First Corp.*, 246 F. Supp. 3d 1124, 1126 (D. Md. 2017) (citing *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)).

BCH does not contend they would be prejudiced if Mr. Rose files his amended complaint. And BCH was aware of Ms. Keener's November 13 email, attached to the proposed amended complaint, as it was written by a BCH employee and BCH apparently gave a copy to the EEOC. There is no evidence of bad faith by Mr. Rose.

BCH's only argument for denying the motion to amend is that it would be futile, because it fails to state a claim and because BCH is entitled to the application of the ministerial exception. *See Logue*, 246 F. Supp. 3d at 1126 (noting that "[a] proposed amendment is considered futile if it cannot withstand a motion to dismiss" (citing *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995))).

### A. Does the Proposed Amended Complaint State a Plausible ADA Discrimination Claim Against BCH?

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[3] Mr. Rose's proposed amended complaint includes facts sufficient to make his ADA claim plausible. Even though it is not necessary for him to prove his case at the pleading stage, *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 584 (4th Cir. 2015), Mr. Rose has alleged facts to support each element of a *prima facie* case of associational discrimination. *See Niner v.*

---

[3] The Court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

6

*Garrett Cty. Pub. Works*, No. ELH-17-2948, 2018 WL 3869748, at *16 (D. Md. Aug. 15, 2018) (noting that "the elements of a prima facie case are a helpful guide in assessing the adequacy of the allegations").

To make out a *prima facie* case of associational discrimination under the ADA,[4] Mr. Rose will need to show that (1) he was qualified for the BCH position when he applied; (2) he was subjected to adverse employment action, such as a refusal to hire; (3) BCH knew at that time that Mrs. Rose had a disability; and (4) BCH refused to hire him under circumstances raising a reasonable inference that Mrs. Rose's disability was a determining factor in the employer's decision. *See Smith v. Kelly*, No. 5:12–CV–713–BR, 2013 WL 4441477, at *1 (E.D.N.C. July 25, 2013) (collecting cases).

Mr. Rose has alleged facts tending to indicate he and Mrs. Rose were qualified for the BCH job and that they were not hired for it. The ADA defines a qualified individual as someone "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).[5] According to the complaint, the Roses progressed through three interview rounds and two follow-up phone calls, indicating they were qualified. They had held previous similar jobs without problems. After the final interview, a BCH employee said

---

[4] The ADA definition of discrimination includes "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4).

[5] The availability of reasonable accommodations is not at issue. Mrs. Rose initially asked for an accommodation—having her service dogs available to her—then rescinded that request, and Mr. Rose does not appear to assert this accommodation was wrongfully denied.

in an email that the Roses "were our next choice to consider for employment." Doc. 25 at 21. And when Ms. Keener called with the job rejection, she told Mr. Rose "that they thought the Roses were a fabulous couple and that the Roses would do well." *Id.* at p. 14 ¶ 15. Despite these qualifications, BCH did not hire Mr. Rose for an open position. These allegations are sufficient to support the second element, as a refusal to hire is an adverse employment action. 42 U.S.C. § 12112(a) (listing "hiring . . . of employees" among employment actions subject to ADA's discrimination protections).

Mr. Rose has also alleged facts to support the third element: that BCH knew his wife had an actual disability or, in the alternative, that BCH regarded her as having a disability. 42 U.S.C. § 12102(1).[6] Mr. Rose's proposed amended complaint alleges that Mrs. Rose has a history of using service dogs to alert her if someone is at the door, as she cannot hear them knocking; she is trying to obtain hearing aids; and that she is "usually okay if the person she is talking to is looking at her," implying she has difficulty hearing when she cannot see the person's face. Doc. 25 at pp. 9–10 ¶ 12. He also alleges that BCH's hiring employees repeatedly inquired about her hearing loss, indicating they were aware of Mrs. Rose's hearing impairment.

---

[6] The ADA defines "disability" as follows:
  (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
  (B) a record of such an impairment; or
  (C) being regarded as having such an impairment (as described in paragraph (3)).
42 U.S.C. § 12102(1). Although the proposed amended complaint does not cite the ADA as the statute under which it proceeds, nor does it specify which prong(s) of the ADA disability definition should apply, the Court "is required to interpret pro se documents liberally and will hold those documents to a less stringent standard than those drafted by attorneys." *Yin v. Columbia Int'l Univ.*, 335 F. Supp. 3d 803, 817 (D.S.C. 2018).

BCH contends that Mrs. Rose is not "substantially limited" in a major life activity and thus she does not satisfy the statutory definition of having a disability. First, BCH seeks to apply a standard predating the 2008 Amendments, which restored a broad definition of "disability" under the ADA. *See, e.g.*, 42 U.S.C. § 12102(4); ADA Amendments Act of 2008, Pub. L. No. 110-325, § 2(b)(4)–(6), 122 Stat. 3553 (2008); *see also Chamberlain v. Securian Fin. Grp., Inc*., 180 F. Supp. 3d 381, 397 n.5 (W.D.N.C. 2016) (quoting *Summers v. Altarum Inst. Corp.*, 740 F.3d 325, 329 (4th Cir. 2014)).

Second, BCH relies on Mr. Rose's allegations that his wife's hearing loss did not limit her. But his allegations also allow the inference that this was largely because his wife had learned how to manage her hearing loss, and courts evaluate whether a person has a disability as defined by the Act without regard to the ameliorative effects of mitigating measures such as learned behavioral modifications. *J.D. v. Colonial Williamsburg Found.*, 925 F.3d 663, 670–71 (4th Cir. 2019) (citing 42 U.S.C. § 12101(4)(E)(i) and noting the "clear mandate of the ADAAA").

Mr. Rose has also alleged facts tending to show that BCH regarded Mrs. Rose as having a disability, which is sufficient to meet the third element even if Mrs. Rose's hearing loss does not reach the level of a disability as the Act defines that term. The 2008 Amendments explicitly protect persons who establish "that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). "[T]he perception of the employer becomes the relevant inquiry for the court." *Chamberlain*, 180 F. Supp. 3d at 399. As

9

previously discussed, there are ample allegations tending to show that BCH was concerned about her hearing loss and regarded her as having a physical impairment. [7]

Finally, the facts alleged support a reasonable inference that Mrs. Rose's hearing loss "was a determining factor" in BCH's failure to hire Mr. Rose, the fourth element of a *prima facie* case. *Smith*, 2013 WL 4441477, at *1. After their in-person interview, as noted *supra*, BCH staff called twice to ask Mrs. Rose about her ability to do the job with or without service dogs. Mr. Bunker told Mrs. Rose he was asking such questions "so they could make an informed decision in hiring her," Doc. 25 at p. 10 ¶ 12, and Mr. Adamcik said he was "trying to draw a line between the security of the kids;" Mrs. Rose explained, "again, that she will not need her dogs present." *Id.* at p. 12 ¶ 13. In an email written after the first and before the second follow-up conversation, Ms. Keener indicated that Mrs. Rose's hearing loss would be part of the hiring decision. *Id.* at 21.

BCH makes a confusing argument that because the position was for a married couple, it had a "legitimate, non-discriminatory reason" not to hire Mr. Rose once it decided not to hire Mrs. Rose. BCH appears to contend that its reasons for not hiring Mrs. Rose are irrelevant and that even if it refused to hire her on the basis of her disability, it could refuse to hire Mr. Rose because his wife was not going to be hired.

---

[7] BCH contends that to qualify as a disability under the "regarded as" prong, Mrs. Rose's hearing loss would have to substantially limit a major life activity. Doc. 27 at 10, 12–13. But BCH relies on cases that predate the ADAAA, which expanded the "regarded as" definition and clarified it does not require the plaintiff to demonstrate any specific level of impairment. *See* 42 U.S.C. § 12102(3)(A); *see also West v. J.O. Stevenson, Inc.*, 164 F. Supp. 3d 751, 773–74 (E.D.N.C. 2016) (citing *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 703 (4th Cir. 2001), as "stating test for pre-amendment 'regarded as' prong").

Doc. 27 at 10–11. However, BCH has provided no authority to support this view of the ADA, *see* L.R. 7.2(a)(4), and it appears inconsistent with the ADA's prohibition of "denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association[.]" 42 U.S.C. § 12112(b)(4). *See Smith*, 2013 WL 4441477, at *1.

Mr. Rose's proposed amended complaint easily states a claim for discrimination under the ADA, so as to defeat a motion to dismiss. It would not be futile to allow him to file the proposed amended complaint.

### B. Does the Ministerial Exception Apply?

BCH contends that it is entitled to the "ministerial exception," which would bar Mr. Rose's ADA claim under the First Amendment. Doc. 27 at 14. Because the facts necessary to this affirmative defense are not clearly established on the face of the proposed amended complaint and referenced documents, and resolution of whether this exception applies requires a developed factual record, the potential applicability of this exception does not make the filing of the proposed amended complaint futile.

Certain claims—including discrimination under the ADA—that "concern[] the employment relationship between a religious institution and one of its ministers" may be barred by the First Amendment. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 180 (2012). Despite its name, this exception "is not limited to the head of a religious congregation." *Id.* at 190. There is no "rigid formula for deciding when an employee qualifies as a minister," *id.*, and "the relevant inquiry is whether the function of the position is important to the spiritual and pastoral mission of the religious

11

institution." *Davis v. Baltimore Hebrew Congregation*, 985 F. Supp. 2d 701, 710 (D. Md. 2013).

This is an affirmative defense. *Hosanna-Tabor*, 565 U.S. at 195 n.4. Affirmative defenses generally should not be resolved at the motion to dismiss stage[8] except "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).

While whether the ministerial exception applies is a question of law for the court, *Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829, 833 (6th Cir. 2015); *Smith v. Raleigh Dist. of N.C. Conference of United Methodist Church*, 63 F. Supp. 2d 694, 706 (E.D.N.C. 1999), the "subsidiary determination of whether a discrimination plaintiff was a minister is both factual and case-specific." *Collette v. Archdiocese of Chicago*, 200 F. Supp. 3d 730, 733 & n.1 (N.D. Ill. 2016); *see also Davis*, 985 F. Supp. 2d at 710 (noting the Fourth Circuit's "individualized, fact-specific 'primary duties' test"). Whether a claim is barred by the ministerial exception requires evaluating considerations such as the "formal title" given by the employer, "the substance reflected in that title, her own use of that title, and the important religious functions she performed for the Church." *Hosanna-Tabor*, 565 U.S. at 192. As such, applicability of the ministerial exception is generally inappropriate for resolution on the pleadings. *See, e.g.*, *Yin v. Columbia Int'l Univ.*, No. 3:15-cv-03656-JMC, 2016 WL 5349090, at *6 (D.S.C. Sept. 26, 2016).

---

[8] Rule 12(c) motions for judgment on the pleadings are also evaluated by applying the standard used to assess a Rule 12(b)(6) dismissal. *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002).

12

The allegations in the proposed amended complaint do not mention religion, and it is referenced only briefly in one of the exhibits. Doc. 25 at 19. While it is clear BCH seeks Christian applicants, the job title of "Child Care Worker (aka Houseparents)" has no religious overtones. Doc. 21-3 at 2. The job description lists overwhelmingly secular duties, *id.* at 2–3, and it does not require the child care worker to lead church services or to have any religious education or training. *Id.*

The complaint and the job description do not clearly establish that the child care worker position is ministerial. Mr. Rose's claims may proceed,[9] and BCH may renew this argument at a later stage, when the factual record is more developed. *See Yin*, 2016 WL 11409591, at *4 n.2.

### III. Motion to Dismiss or for Judgment on the Pleadings by BCH

BCH's motion to dismiss, Doc. 22, is addressed to Mr. Rose's original complaint; Mr. Rose filed his proposed amended complaint while BCH's motion for judgment on the pleadings was pending. An "amended pleading supersedes the original pleading," however, and "motions directed at superseded pleadings may be denied as moot." *Hart v. Union Cty.*, No. 3:19-CV-159-KDB-DCK, 2019 WL 4145703, at *1 (W.D.N.C. Aug. 30, 2019); *see also Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017) the Accordingly, the Court denies BCH's motion to dismiss as moot.

---

[9] In view of this decision, the Court need not address Mr. Rose's assertion that the exception does not apply because BCH accepts state funds and has agreed to comply with federal nondiscrimination laws.

## CONCLUSION

The Court grants the individual defendants' motion to dismiss, as the ADA does not provide for individual liability. Mr. Rose's proposed amended complaint will withstand a motion to dismiss and thus is not futile, so the Court grants his motion to amend his complaint. As this amended complaint supersedes the original complaint, BCH's motion to dismiss or for judgment on the pleadings directed at his original complaint is denied as moot.

It is **ORDERED** that:

1. The individual defendants' motion to dismiss, Doc. 17, is **GRANTED** and the ADA claims against the individual defendants are **DISMISSED** with prejudice.
2. The plaintiff's motion for leave to file an amended complaint, Doc. 25, is **GRANTED**.
3. The defendant Baptist Children's Homes of North Carolina's motion to dismiss or for judgment on the pleadings, Doc. 22, is **DENIED as moot**.
4. The Court suggests that this case be consolidated with Ms. Rose's case, No. 1:19-cv-621-CCE-JLW, and asks the Magistrate Judge to consider this pursuant to Fed. R. Civ. P. 42 at the initial pretrial conference with the parties, which can occur at the Magistrate Judge's next available date.

This the 29th day of October, 2019.

UNITED STATES DISTRICT JUDGE